United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINNIE B. FANG,<br><br>    Plaintiff,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,<br><br>    Defendant. | Case No.16-cv-06071-JD<br><br>**ORDER RE MOTION TO VACATE ARBITRATION AWARD**<br><br>Re: Dkt. No. 64 |

Plaintiff Winnie B. Fang seeks to overturn a decision denying her claims against defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") in an arbitration that she initiated before the Financial Industry Regulatory Authority ("FINRA"). Dkt. No. 64. The motion is denied.

## BACKGROUND

The salient facts are undisputed. In 2005, Fang delivered to Merrill Lynch certificates for shares of stock in Peet's Coffee & Tea, Inc. ("Peet's") that her deceased husband had previously held. Dkt. No. 35 ¶¶ 5-6. In 2010, Fang was notified that the Controller for the State of California had received Peet's stock as unclaimed property. *Id.* ¶ 9. Fang sued Peet's and other entities, but not Merrill Lynch, in California superior court for mishandling her investment. *Id*. ¶¶ 8, 10; Dkt. No. 64 at 6. The case ended in a "partial settlement" of Fang's alleged losses. Dkt. No. 35 ¶ 12.

In 2015, Fang initiated arbitration proceedings under FINRA's rules and procedures against Merrill Lynch for breach of fiduciary duties and breach of contract. Dkt. No. 57, Ex. B. The gravamen of the arbitration demand was that Merrill Lynch had not properly managed shareholder registration information for her stock, which resulted in the escheatment and the issuance of misleading statements by Merrill Lynch indicating that the shares were in Fang's account when in fact they had escheated to the state. *See* Dkt. No. 57, Ex. A; Dkt. No. 64 at 8.

In February 2018, a FINRA arbitration panel of three neutrals issued an award. Dkt. No. 61, Ex. L. The panel denied Fang's claims in their entirety, and ordered her to pay $6,000 in expert witness fees incurred by Merrill Lynch. *Id*. at 4.

In the award's summary of facts, the panel recounted in detail the rather unusual twists and turns in the proceedings. Among other events, the panel noted that it had scheduled a hearing on the merits for a date in October 2016, but that Fang failed to submit a witness list or other pre-hearing materials as required by the panel's scheduling order. *Id.* at 2. Instead, Fang filed an improper *ex parte* motion to continue the hearing on the grounds that Merrill Lynch had not provided certain documents during discovery, and that Fang was planning to file a class action on the same claims. *Id*. The panel noted that Fang had not filed a motion to compel or any other discovery motion by the deadline in the scheduling order, and had not provided evidence to FINRA that she had filed a class action case anywhere. *Id*. The request for a continuance was denied.

Fang then filed a motion to dismiss her claims without prejudice, and a motion for reconsideration of the denial of the continuance. *Id*. The panel left the merits hearing date in place and said it would take up these motions at the start of the proceedings. *Id*. at 2-3.

At that juncture, just a few days before the October 2016 hearing, Fang filed this action along with a motion for a temporary restraining order to stop the FINRA proceedings for alleged procedural violations. Dkt. Nos. 7, 8. The Court denied a TRO because Fang had failed to show a fair chance of success on the merits or a serious question requiring litigation, or the likelihood of irreparable harm. Dkt. No. 19. Fang appealed the denial to the Ninth Circuit, which affirmed the Court's order. Dkt. No. 30.

While the TRO events were underway, Fang continued to interact with the FINRA panel, again with less than smooth sailing. The panel found that Fang had mischaracterized one of the panel's orders to this Court. Dkt. No. 61, Ex. L at 3. The panel also found that Fang's attorney had falsely represented that the TRO had been granted. *Id*. Of even greater concern, Fang and her lawyer failed to appear at the October 2016 hearing, and consequently did not argue her pending motions to dismiss and for reconsideration, or the merits of her claims. *Id*. Merrill Lynch showed

2

up, and the panel conducted an evidentiary hearing under FINRA rules. *Id.*

After that, Merrill Lynch sent the panel a copy of the Ninth Circuit decision affirming the denial of the TRO, and Fang submitted a "responsive" document that the panel interpreted to be another motion to dismiss without prejudice. *Id.* The panel decided to suspend its proceedings until this Court decided class certification in the case Fang filed here. *Id.* The Court, however, had already stayed this case before the panel's suspension decision to allow for completion of the arbitration. Dkt. No. 32. The stay was entered at the parties' joint request. *Id.* After Merrill Lynch advised the panel of this in a motion for the issuance of an award, the panel returned to action and convened a hearing on that motion and what appears to have been a new motion to dismiss by Fang. Dkt. No. 61, Ex. L at 4. At the hearing in January 2018, Fang's lawyer said the reason he could not attend the October 2016 merits hearing was because "he had to appear in a matter for the United Nations." *Id.* The panel noted that the lawyer had not raised that particular conflict in his continuance papers. *Id.* The panel denied Fang's motion to dismiss and issued the February 2018 award decision. *Id.*

## LEGAL STANDARDS

Our national policy favoring arbitrations means that "courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kent*, 514 U.S. 938, 942 (1995)); *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997-98 (9th Cir. 2003) (en banc). As a strict rule, an arbitration award may be vacated only "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a) ("Section 10(a)"); *see also Biller v. Toyota Motor Co.*, 668 F.3d 655, 663-64 (9th Cir. 2012). These are the exclusive grounds for vacating an award, and if the moving

1 party does not establish that one or more of them applies, the award will stand "even in the face of erroneous findings of fact or misinterpretations of law." *Lagstein v. Certain Underwriters at Lloyd's London*, 607 F.3d 634, 640 (9th Cir. 2010) (internal quotation omitted).

The party seeking to vacate the award "bears the burden of establishing that one of the grounds . . . justifies vacating the award." *Glob. eBusiness Servs., Inc. v. Interactive Brokers LLC*, 16-cv-01264-JD, 2017 WL 4877174, at *1 (N.D. Cal. Oct. 30, 2017), *aff'd in part, appeal dismissed in part*, 17-17260, 2018 WL 5389627 (9th Cir. Oct. 29, 2018).

## DISCUSSION

As the panel's statement of facts indicates, Fang in effect chose not to litigate the arbitration demand she voluntarily submitted to FINRA. Nevertheless, she seeks to vacate the award by heaping blame on the arbitrators and Merrill Lynch. Fang mentions all four grounds in Section 10(a) as a basis for overturning the panel's decision, but argues mainly that the award was the product of corruption, fraud and undue means, and exceeded the arbitrators' authority.

The record does not support Fang's arguments for vacating the award. To start, there is no evidence even remotely indicating that Fang did not get a fair shake because the arbitrators were corrupt or partial to Merrill Lynch. She presents no evidence of an actual bias against her, or facts that might create a reasonable impression of bias or otherwise indicate "evident corruption." *See Lagstein*, 607 F.3d at 645-46.

Fang puts particular emphasis on discovery disputes and motions practice before the panel as alleged evidence of fraud and undue means, *see, e.g.*, Dkt. No. 64 at 16, but her dissatisfaction with Merrill Lynch's discovery responses or the panel's disposition of her motions are no basis for throwing out the award. Discovery and other procedural issues "'which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.'" *Lagstein*, 607 F.3d at 644 (quoting *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)) (other quotation omitted). This is all more the more true here, where Fang actually raised discovery and motion issues with the arbitration panel, but not in a diligent or timely way, as stated in the panel's statement of facts. She has not demonstrated that Merrill Lynch hid documents or information that might have made a material difference to the merits of

her claims. Looking at the arbitration as a whole, Fang also has not demonstrated that Merrill Lynch engaged in conduct that could be seen as "immoral if not illegal." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (quotation and citation omitted). Consequently, Fang may not overturn the arbitration award on these grounds. *See Braggs v. Jones*, 614 Fed. App'x 901, 903 (9th Cir. 2015); *A.G. Edwards*, 967 F.2d at 1403.

Fang's contention that the arbitrators exceeded their powers is equally unavailing. Fang casts this allegation in various terms, including that "the panel was without jurisdiction," but the overarching theme is that the arbitrators acted beyond the grant of their authority. *See* Dkt. No. 64 at 13-14. While the grounds for this claim are not crystal clear, Fang's argument appears to be that, after voluntarily initiating the arbitration, she decided to pursue a class action in court against Merrill Lynch, and that the arbitration should have been terminated because FINRA has no provision for handling class action disputes. *Id*. at 14. In her view, the panel's continued activity after that, including the issuance of the award, exceeded its powers.

This is not a well-taken reason to vacate the award. Fang relies heavily on arguments that the panel misapplied FINRA rules to proceed with the arbitration. *See, e.g.*, *id.* at 13-14. But the interpretation of the FINRA rules is up to the arbitrators to decide, and it is not for the district court "to determine whether the arbitrator committed an error, even a serious error," in making those interpretations. *Sanchez v. Elizondo*, 878 F.3d 1216, 1223 (9th Cir. 2018). While that puts this contention to rest, it is also worth noting that Fang has also not shown that the panel did, in fact, misinterpret the FINRA rules.

Nor has Fang shown that the arbitrators somehow exceeded the bounds of the agreement that empowered them to hear Fang's arbitration demand. *Id*. The record plainly shows that Fang herself initiated the arbitration solely for her own individual claim, and expressly submitted to FINRA's rules and authority for that purpose. Dkt. No. 57, Ex. B. At all times, the panel acted on her personal claim as she filed it. The fact that she might have decided later to pursue class action claims by no means demonstrates that the panel itself acted in any way beyond the scope of her original arbitration submission, or lacked "jurisdiction" over her arbitration demand. To the contrary, it was Fang who wanted to pursue class claims outside the scope of the FINRA rules; it

was not the panel who sought to exceed the bounds of the arbitration agreement.

Fang does not identify a FINRA rule stating that the arbitration should have been terminated after she expressed a desire to file a class action lawsuit, or any case that supports that proposition. The cases she cites are off point because they involved motions to compel arbitration of putative class actions originally filed in court. *See, e.g.*, *Alakozai v. Chase Inv. Servs. Corp.*, 11-cv-9178-SJO, 2012 WL 748584 at *2-3 (C.D. Cal. Mar. 1, 2012). That is not the situation here. In addition, Fang was perfectly free to withdraw her claims at any time under FINRA Rule 12702(b). The consequence would have been a withdrawal with prejudice, which apparently did not suit Fang's litigation plans, *see, e.g.*, Dkt. No. 57, Ex. F at 3, but it cannot fairly or reasonably be said that she was forced to arbitrate anything that she did not originally consent to do. *See Sanchez*, 878 F.3d at 1222. Fang has also not shown that the arbitrators were "completely irrational" or guilty of "a manifest disregard of law." *Kyocera*, 341 F.3d at 997 (internal citations omitted).

## CONCLUSION

Overall, Fang has not crossed the high bar set in Section 10(a) to vacate the arbitrators' award. The motion is denied.

**IT IS SO ORDERED.**

Dated: November 23, 2018

JAMES DONATO
United States District Judge